IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:07-CR-24 |
| | ) | (Phillips / Shirley) |
| V. | ) | |
| | ) | |
| ROBERT J. KILLEN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. ' 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the Court on Defendant Robert J. Killen's Motion to Dismiss Indictment [Doc. 10]. The United States has responded in opposition at [Doc. 11]. The Court heard argument on the merits of the motion August 27, 2007. Assistant United States Attorney Robert E. Simpson was present on behalf of the government. Attorney Jonathan Moffatt was present representing Mr. Killen, who was also present. The parties requested leave to submit supplemental filings for consideration by the Court, which was granted. The United States supplemented the record before the Court with a copy of the relevant National Park Service Standing Order; Defendant Killen filed a supplemental Memorandum of Law [Doc. 14] in support of his position. After expiration of the period provided for response by the government, the Court took this matter under advisement September 25, 2007.

# I. FACTS

The facts before the Court are largely uncontested, for the purposes of the Motion to Dismiss Indictment. On November 29, 1999, the Criminal Court for Bradley County, Tennessee declared Robert Killen to be an Habitual Motor Vehicle Offender (HMVO) pursuant to state law. As an HMVO, Mr. Killen is prohibited from operating a motor vehicle in the State of Tennessee for seven years. Mr. Killen's driver license is suspended, due to his HMVO status and perhaps some other basis.

On August 25, 2006, Mr. Killen was stopped while driving in the Cherokee National Forest. The officer arrested Mr. Killen for driving on a suspended license.[1] The penalty for such a violation in the Cherokee National Forest is up to six moths imprisonment and up to a $5,000 fine. Mr. Killen did not appear as commanded on his citation and was consequently arrested. On February 21, 2007, Mr. Killen plead guilty to driving on a suspended license. Pursuant to the announced plea agreement, Mr. Killen was be released on "time-served," having been in jail for some six days.

On March 20, 2007, an indictment was issued charging Mr. Killen with operating a motor vehicle in the Cherokee National Forest as an HMVO on August 25, 2006, [Doc. 1], in violation of 18 U.S.C. ' 13. The parties agree that the citation and the indictment both arise from the same driving incident. Among the material provided by the government in discovery are police reports indicating the officer knew the defendant was an HMVO on the night of his arrest. [Doc. 11 at p. 2]. Mr. Killen moves for the indictment to be dismissed as violative of the Double Jeopardy Clause.

---

[1] Mr. Killen was also cited for having an open container of alcohol in the vehicle, to which he later plead guilty.

## II: POSITIONS OF THE PARTIES

A.     Defendant's Position

Defendant argues that his indictment for driving as an HMVO after his conviction for driving on suspended license violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  Citing North Carolina v. Pearce, 395 U.S, 711, 717 (1969), Mr. Killen states that the Double Jeopardy Clause protects three interests: first, it bars a second prosecution after acquittal; second, it bars a subsequent prosecution after conviction; and third, it prohibits multiple punishments for the same offense.

Mr. Killen argues there are two tests to determine whether a prosecution violates the Double Jeopardy Clause, depending on the posture of the case: the Blockburger v. United States, 284 U.S. 299 (1932) "same elements" test; and the Rashad v. Burt, 108 F.3d 677 (6th Cir. 1997) "same transaction" test.  Mr. Killen argues that the instant indictment constitutes a "successive prosecution" and is governed by the "same transaction" test because operating the motor vehicle is the same act forming the basis for both charges.  Mr. Killen argues that under the "same transaction" test, the government may not proceed on the indictment.

B.     Government's Position

In opposition, the United States urges the Court to apply the Blockburger "same elements" test, as set forth by the Supreme Court, "[a] single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other," quoting  Blockburger, 284 U.S. at 304.

The government argues that it will be required to put on facts to prove the indictment in addition to those it would have been required to set forth in support of the citation. The government states that it will be required to prove that Mr. Killen was declared an HMVO and also that the HMVO order was still in effect at the time he drove on August 26, 2006. The United States draws the Court's attention to examples of recent application of the "same elements" test by the Sixth Circuit, discussing United States v. DeCarlo, 434 F.3d 447 (6th Cir. 2006); and United States v. Barrett, 933 F.2d 355 (6th Cir. 1991).

### III. ANALYSIS

As the United States correctly observes, the traditional test for double jeopardy claims is the "same elements" test set forth in Blockburger v. United States, 284 U.S. 299 (1932). Blockburger set forth the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . .
>
> Blockburger, 284 U.S. at 304.

This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . . " Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975).

The <u>Blockburger</u> test is not the only test for Double Jeopardy analysis, however. The United States Supreme Court has held that successive prosecutions implicate different protections contained in the Double Jeopardy Clause:

> Where successive prosecutions are at stake, the guarantee against double jeopardy serves a constitutional policy of finality for the defendant's benefit. That policy protects the accused from attempts to relitigate the facts underlying a prior acquittal, <u>and from attempts to secure additional punishment after a prior conviction and sentence</u>.
> <u>Brown v. Ohio</u>, 432 U.S. 161, 165-166 (1977)(citations omitted) [emphasis added].

Quoting from the <u>Brown</u> opinion at footnote 6, the Sixth Circuit has held that the <u>Blockburger</u> test is "insufficient" to address the issues of Double Jeopardy where "the concern is not multiple charges under separate statutes, but rather <u>successive prosecutions</u> for conduct that may constitute the same act or transaction." <u>Rashad v. Burt</u>, 108 F.3d 677 (6th Cir. 1997) [emphasis added]. In <u>Rashad</u>, the Sixth Circuit included with approval an excerpt from <u>Jordan v. Commonwealth of Virginia</u>, 653 F.2d 870, 873 (4th Cir.1980) in which that court articulated the need for a different standard:

> Successive prosecutions implicate a component of double jeopardy protection not implicated in single prosecutions of joined charges such as those involved in Blockburger ...: the protection against retrial itself. In this component double jeopardy ... insures that having once "run the gauntlet" of criminal trial ..., a person shall not be required to run essentially the same gauntlet again. It protects not only against multiple punishments but against multiple trials for the same offense.
>
> <u>Rashad</u> at 679-68 (quoting <u>Jordan</u>, 653 F.2d at 873).

The Court finds that the March 20, 2007, indictment constitutes a "successive prosecution" with respect to the February 21, 2007, guilty plea.[2] Mr. Killen plead guilty and was convicted of driving on a suspended license. The government now seeks to punish Mr. Killen for the same driving, at the same time, as part of the "same act or transaction" by proving he was driving while he was prohibited to do so by the HMVO law. Mr. Killen had a suspended license and, evidently, was an HMVO. Under the government's theory, if Mr. Killen were prohibited from driving for multiple reasons he might be subject to successive prosecution for each reason (e.g., failure to pay child support, drop-out from high school, failure to satisfy citations, DUI conviction) because the government would be required to show a different status for the prohibition on each. Before this Court is a single incidence of Mr. Killen driving a vehicle when he was prohibited by the State of Tennessee from doing so, whether for one reason or for multiple reasons. A second criminal charge for the same driving incident constitutes a "successive prosecution."

---

[2] Having concluded that the Blockburger "same elements" test is not applicable to the facts before the Court, the Court need not address the operation of the Assimilative Crimes Act, 18 U.S.C. § 13, to determine the appropriate statutory scheme to analyze. However, even if the Court addressed the assimilation of Tennessee statutes and even if the Court made a state law analysis (as so provided in the government's brief), the result would be the same. Under Tennessee law, "convictions for driving while one's license is cancelled, suspended or revoked, and a HMVO offense are the same under double jeopardy principles of the evidence relied upon by the prosecution to establish the crimes was the same." State v. Wiley, 2006 WL 138610 (Tenn. Crim. App. 2006)(citing State v. Green, 947 S.W.2d 186 (Tenn. Crim. App. 1997). As in Wiley, "the convictions for [both charges are] based upon the same evidence. They both came about at the result of the events on [August 25, 2006]." Wiley at *4. As in Green, "the [government] rel[ies] on precisely the same evidence to prove the DORL [Driving on revoked License] and the habitual motor offenses; that [the officer] was previously [herein, on the same night] aware that the defendant had been declared a Habitual Motor Vehicle Offender observed the defendant driving … [and after he was stopped, the officer] arrested him. Green, 947 S.W.2d at 189.

As a "successive prosecution," the current charge is subject to the double jeopardy analysis set forth by the Sixth Circuit in Rashad v. Burt, 108 F.3d 677 (6th Cir. 1997). The rule of Rashad is that "successive prosecutions based on the same fact situation are barred by double jeopardy if the separate charges could have been joined and no significant additional fact was required in the second prosecution." Rashad v. Burt, 108 F.3d at 680.

The Rashad analysis embodies a three step inquiry for successive prosecutions:

    1. whether the two are based on the same fact situation;

    2. whether the separate charges could have been joined; and

    3. whether no significant additional fact was required in the second prosecution.

The parties agree that the charges are based upon the same fact situation, Mr. Killen driving a vehicle in the Cherokee National Forest on August 25, 2006. The Court observes that the separate charges of driving on a suspended license and driving after being declared an HMVO could have been properly joined for prosecution under Rule 8 of the Federal Rules of Criminal Procedure.[3]

Concluding that both prong one and prong two are met in this case, the Court next considers prong three: whether a "significant additional fact" would be required in the second prosecution. The United States argues that it would be required to prove Mr. Killen's status as an HMVO were the indictment to proceed to trial.[4] Mr. Killen argues that this does not

---

[3] Rule 8. Joinder of Offenses or Defendants(a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

[4] While the government relies exclusively upon the Blockburger test, which the Court has

7

constitute a significant additional fact for purposes of double jeopardy. As this prong represents a fact-intensive question, Courts providing guidance on this point have used factual illustrations of what type of fact may constitute a "significant additional fact."

The Supreme Court in Brown provided two factual examples, then discussed the operation of the Double Jeopardy Clause as to both. The Court finds a comparison with the Killen facts illustrative and helpful to the "significant additional fact" inquiry. First, the Brown court discussed Ashe v. Swenson, 397 U.S. 436 (1970):

> where an acquittal on a charge of robbing one of several participants in a poker game established that the accused was not present at the robbery, the Court held that principles of collateral estoppel embodied in the Double Jeopardy Clause barred prosecutions of the accused for robbing the other victims.
> Brown, 432 U.S. at 166 n.6.

As the second example offered in Brown, in In re Nielsen, 131 U.S. 176 (1889)**:**

> [T]he Court held that a conviction of a Mormon on a charge of cohabiting with his two wives over a 2 1/2-year period barred a subsequent prosecution for adultery with one of them on the day following the end of that period.
> Id.

On these two sets of facts, the Supreme Court concluded:

> In both cases, strict application of the Blockburger test would have permitted imposition of consecutive sentences had the charges been consolidated in a single proceeding. In Ashe, separate convictions of the robbery of each victim would have required proof in each case that a different individual had been robbed. In Nielsen, conviction for adultery required proof that the defendant had sexual intercourse with one woman while married to another; conviction for

---

concluded is inapplicable in to these facts, the Court will nonetheless consider this argument within Rashad's framework.

> cohabitation required proof that the defendant lived with more than one woman at the same time. Nonetheless, the Court in both cases held the separate offenses to be the "same" for purposes of protecting the accused from having to "run the gauntlet' a second time."
>
> Id. (quoting Ashe, 397 U.S., at 446 (in turn quoting from Green v. United States, 355 U.S. 184, 190(1957)).

The facts before the Sixth Circuit in Rashad with respect to "same fact situation" test were:

> Rashad's first prosecution charged him with possession with intent to distribute cocaine, and involved the drugs found in the Greydale residence. Rashad's second prosecution was also for possession with intent to distribute cocaine, and was based on the drugs found in the Lincoln automobile. The only additional fact required to convict on this second prosecution was the cocaine's location in the car. This fact is not "significant" under the circumstances, however, because the location of the drugs in the car does not indicate a separate crime from that indicated by the drugs in the house-possession with intent to distribute.
>
> Rashad,108 F.3d at 680.

The Sixth Circuit described the second charge brought against Rashad as "strategic maneuvering [] forbidden by the Double Jeopardy Clause." Id. The court emphasized, "[i]t is well settled that double jeopardy protections may not be avoided by the simple expedient of exercising prosecutorial discretion to "divid[e] a single crime into a series of temporal or spatial units." Rashad,108 F.3d at 680 (quoting Jordan, 653 F.2d at 875, in turn quoting Brown, 432 U.S. at 165). Even the dissent in Rashad relied in part on the "exception" language in Brown, where "the state is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not yet occurred or have not been discovered, despite the exercise of due diligence." Unlike Rashad, the arresting officer was aware of the fact of Defendant Killen's status as an HMVO on the night of his arrest. This fact,

9

taken with the passing of seven months before indictment, and then only *after* Defendant Killen had plead guilty to the driving on a suspended license charge, does not help the government's position, but rather argue against it.

The Court finds the third prong of <u>Rashad</u> is satisfied under the facts of this case. The proof that Mr. Killen was forbidden to drive because he was an HMVO, compared to the proof that Mr. Killen was forbidden to drive because his license was revoked, does not constitute a "significant additional fact." As a practical matter, the proof that Mr. Killen was an HMVO and the proof that he was driving on a revoked license would both appear to involve evidence of an official document from the State of Tennessee indicating such designation. The additional facts to be proven, such as the entry of the HMVO Order and its continued effect, are a great deal less "significant" in this context than the adultery proof required in the factual context of <u>Neilson</u>. In <u>Rashad</u>, proof of the defendant's ownership of a different cache of drugs for resale in a different place would certainly have required the prosecution to present additional facts, though not *significant* additional facts as the Sixth Circuit concluded.

In light of the successive prosecutions rejected in <u>Ashe,</u> <u>In re Nielsen</u> and <u>Rashad</u>, this Court concludes that a second prosecution for the same conduct for which Mr. Killen was convicted and served seven days in jail is contrary to both the letter and spirit of the Fifth Amendment.

## IV: CONCLUSION

For the reasons stated above, the Court recommends that Mr. Killen's Motion to Dismiss Indictment **[Doc. 10]** be **GRANTED**.[5]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).